LLOYD A. DUFFY, appellant, v. LOUIS M. DUFFY et al., appellees.

No. 47972.

(Reported in 50 N.W.2d 653)

JANUARY 8, 1952.

Ryan & Ryan, of Des Moines, for appellant.

Brody, Charlton, Parker & Roberts, of Des Moines, for appellee United States Rubber Company.

Miller, Davis, Hise & Howland, of Des Moines, for appellees Louis M. Duffy and Duffy Tire Company.

MANTZ, J.—Plaintiff, Lloyd A. Duffy, brought a suit in law against Louis M. Duffy, Duffy Tire Company, and United States Rubber Company. His claim for damages was based upon two counts: (I) in tort, and (II) on contract. The two defendants first-named filed separate answers and conducted a separate de-

fense. The same is true of United States Rubber Company. All defenses are in essence the same—a general denial of the claim of plaintiff. When plaintiff rested, the defendants filed separate motions to strike the evidence, to dismiss the two counts and for a directed verdict against plaintiff. These motions were sustained and the jury by direction of the court returned a verdict against plaintiff. Judgment was rendered against plaintiff for costs. Plaintiff has appealed.

I. For reversal plaintiff has set forth fifteen claimed errors. His argument is in four divisions. As the defense of defendants is based upon the failure or lack of evidence to warrant the submission of the case to the jury and the court so found, we think it advisable to set forth the claims of plaintiff as contained in his petition. Each count is against all defendants separately and collectively.

Count I is in tort and Count II is on contract. Many of the allegations are similar.

In essence Count I alleges that plaintiff was a stockholder in the Duffy Tire Company and that he was the owner of twenty-four per cent of its stock; that Louis M. Duffy was in charge of the company and its business; that the U. S. Rubber Company had extended credit to the Duffy Tire Company, and that in January 1947 various officers of said U. S. Rubber Company made a personal investigation of the financial affairs of the Duffy Tire Company and an audit of its worth. An audit showed its net worth was at least $65,000, and if the tire company were liquidated twenty-four per cent of this belonged to plaintiff; that plaintiff favored the placing of the tire company in receivership or bankruptcy. He alleges that the defendants by reason of certain false and fraudulent representations induced him to refrain from asking for a receivership and assured him that later a liquidation could be had and by it he would receive $15,600 as represented by twenty-four per cent of its net worth; that later the tire company was liquidated and after payment of debts nothing remained. Plaintiff asked judgment for such sum against all of the defendants.

In Count II plaintiff reaffirmed certain parts of Count I and further alleged, in substance, that both of the defendants

orally agreed with him that if he did not press a claim for receivership or bankruptcy, later there would be a liquidation of the business of the tire company and that when this was done, he, plaintiff, would be paid twenty-four per cent of its net worth as shown by the audit, which amount was $15,600; that he relied upon the statements and orally agreed not to press the receivership step and to go along with the business. In essence this count claims that defendants agreed to purchase his interest in the tire company and see that he got $15,600. He alleges that defendants failed to carry out said contract and he demands judgment for $15,600 and costs.

II.  While Louis M. Duffy and the Duffy Tire Company on the one hand and the United States Rubber Company on the other hand are separate defendants with separate pleadings and counsel, and have filed separate briefs, still we think that their defenses in essence are substantially the same. Therefore we will consider them together. In effect, the defense is a general denial of the claims set forth by plaintiff in both counts of his petition. Under the issues fact questions are raised.

Plaintiff was the only witness. There was certain documentary evidence—contracts and stock certificates, etc.

The record shows that about the time complained of, in addition to the tire company, there were three other interests more or less allied to and controlled or managed by the tire company. These were Duffy Auto Electric & Supply Company, Atlantic Tire Service and the Sigourney Tire Service. All of these were set forth and referred to in a contract signed by plaintiff on July 6, 1946, and by the other interested parties about the same time.

On April 29, 1947, after a conference with the U. S. Rubber Company officials, another contract was entered into wherein the contract of July 6, 1946 was rescinded and a new agreement entered into. The recited purpose was to unify the activities and to strengthen the credit structure of the tire company. Plaintiff knew of this change and did not object; in fact, he signed the new contract. In the April 29 contract the stockholdings of the various parties were set forth. Plaintiff had twenty-four shares and continued to hold same after he left the company in July 1948. Plaintiff stated that this stock certificate in the tire com-

pany was issued to him on April 26, 1947. After the plaintiff left the tire company it continued to operate for a number of months, when it was dissolved. Plaintiff received a notice of the meeting of the stockholders—called for the dissolution of the tire company—and states that he did not vote against it.

After a careful examination of the record we have concluded that the trial court was right in directing a verdict against the plaintiff. The record as made and the testimony of plaintiff are confusing, contradictory and uncertain, and in our judgment do not sustain the allegations of either Count I or Count II.

It is quite apparent from the record that the tire company was deeply involved, in that it was indebted to the U. S. Rubber Company in the amount of approximately $100,000. The business was not going well and was faltering financially. The plaintiff as a witness claimed that he was suspicious and felt that there was something wrong with the management; that he wanted to get his money and get out. Due to the large amount of credit which the U. S. Rubber Company held against the Duffy Tire Company around December 15, 1946, various representatives of the rubber company came to Des Moines to look over the situation. Among such representatives were one Eldred, division sales manager, and Arthur Murray, district credit manager. Plaintiff talked with these representatives and informed them that he wanted to get his money and get out. Following this an audit of the property of the Duffy Tire Company was made and it showed a net worth of approximately $65,000. Following this audit there were conferences attended by plaintiff and Louis Duffy and the U. S. Rubber Company representatives, at which times plans were discussed as to how the tire company could best carry on in the future. The consensus of opinion was that it needed more working capital and it was felt that a merger of the various other concerns, heretofore set forth, would increase the working capital of the Duffy Tire Company.

The record shows that plaintiff and his brother Louis entered into the tire business about 1942—first as to recapping tires and later as a distributor for the U. S. Rubber Company. The suspicion which plaintiff spoke of to the U. S. Rubber Company representatives was that "money was going out of the firm unknown to the balance" of the members. A reading of

the record discloses that plaintiff, beginning in 1946, was dissatisfied with the management of the company, its large debt and its failure to show a profit. In connection with the audit taken by the U. S. Rubber Company the plaintiff testified:

"They said that they were going to take a physical check themselves the next day, and if it was necessary that they were going to have an audit made of the entire books and that everything would be held in abeyance until the audit was completed. They took this physical check and visited the plant, from the warehouse to the recapping plant, and asked for the books and made every attempt to discover something that had put this business in the condition that it was and apparently they could not put their finger on it. The cash was very short in the business; they were amazed at that; and the accounts receivable seemed to be in pretty decent shape for the size of the business, and the inventory seemed to be alright."

Plaintiff was dissatisfied with Louis as manager. He testified at the conference in the latter part of January 1947: "* * * the first thing I said was that I don't want to go with the company with Lou as manager. They asked me who I would have as manager and I said anybody but him. Eldred acted as spokesman for the United States Rubber men and Swartz was the reference man. I said I will take John or Ramsey or any of the boys off the motor floor to be manager. I said that personally I wanted to get out anyhow, and you just let me have my money and I will get out. Mr. Eldred said there is going to be no money taken out of here, and I said possibly I can get out anyhow. That is the essence of my attitude at that time. Mr. Eldred had the audit ahead of him. Whether it was in pencil or typewriter I don't know. Nevertheless, they had gone over the receivables and they had discounted the receivables the amount the Government let them. They also took what the Government would not allow them, and put that in what is known as abeyance. They had the machinery reduced to almost cast iron, which it was. Mr. Eldred was outlining all of this."

He further testified: "I had told Lou once before that I would be happy to throw the thing into receivership, so I personally can see what was going to go on via the court and he said

there was no necessity and perhaps if I did I would drag it out so long anyhow I would lose it before he got it all finished, so by this scheme of mine I can overreach myself."

Plaintiff testified that at that meeting "Eldred spoke up at this time and said 'this company is not broke in the sense of being badly broke but is badly bent and needs cash. It needs working capital,' and he said to me, 'I don't think if you are trying to get out of this company at this time it can be liquidated down to where it has any operational base with the tire business as it is.' "

Plaintiff testified that at that same meeting "Louis agreed if they all stuck together and worked and put their shoulders to the wheel they would get the company over; that Louis said the company had a net worth of $65,000, and if they would not be influenced by outside information * * * the business could go ahead and that, by reducing the outside business into the Duffy Tire Company and bolstering up the credit and so forth they should be able to go ahead with their business and run it for a year at least and then see if the business could not come out with the money."

We quote further from the record: "Plaintiff testified that the meeting then broke up; the United States Rubber men started back to their hotel; that plaintiff and Louis had a conversation; that Louis said, 'that's that'; that plaintiff said, 'I think it is a bad deal personally as I am still for bankrupting the thing and taking my chances of getting the money out'; that Louis said, 'I thought I had assured you enough times that you would get your 24%'; that he said 24% of the $65,000; that he said, 'Why don't you go along and keep quiet and let us work the thing out'; that the plaintiff said, 'I am okeying the thing but I will tell you one thing, I still don't think it is good'; they discussed the matter one way and another and finally left."

Other testimony of plaintiff of like import might be set forth. None of it can give substantial support to the claims made by plaintiff in his petition. It is crystal clear that what the parties were trying to do was to get more vigor into the tire company and to avoid the expenses and consequences of a receivership. There can be no doubt that plaintiff felt that a re-

ceivership might be the best way out. But after the conferences and a thorough discussion of the situation it was agreed to go along and try to make the business pay, with the thought that if they failed in this at some future time the business would be liquidated. This was what was done later, and unfortunately there remained thereafter nothing for the stockholders.

Doubtless, plaintiff could have started a receivership but he did not and decided to go along as it was agreed after the conference. There is nothing substantial in the record to show that any of the defendants did or said anything which could be construed as fraud or misrepresentation, or prevented him from asking for a receiver.

Here was a business—one well established. Plaintiff stated that one year it did a million-dollar business and that it was one of the ten largest independent tire dealers in the United States. While the plaintiff testified that the various members of Duffy Tire Company held various opposing views, we find nothing in the record to indicate that any advantage was taken of plaintiff. He says that he was dissatisfied and wanted to get his money and get out. The matter was argued between him and Louis and with the representatives of the U. S. Rubber Company. They urged that the business go on and while this did not satisfy plaintiff he went along with the company for a number of months. That he did this is best evidenced by the fact that he and other members signed the merger contract on April 29, 1947, wherein the other three related industries were merged with the Duffy Tire Company.

There is no substantial evidence that there was practiced upon plaintiff any fraud or fraudulent representations to keep him from instituting receivership proceedings; neither is there any substantial evidence that the defendants, either collectively or singly, agreed to purchase either his shares of stock in the tire company or his interest therein and pay him therefor. His testimony along that line is vague and uncertain—no time fixed—how and from what source it was to be paid.

We hold that the above and foregoing is determinative of

the issues herein. Plaintiff has failed to make a showing sufficient to warrant a verdict in his favor.

We find no error in the case as claimed by plaintiff. The ruling of the trial court was right and it is affirmed.—Affirmed.

THOMPSON, C. J., and BLISS, GARFIELD, HAYS, MULRONEY, OLIVER, and WENNERSTRUM, JJ., concur.

SMITH, J., not sitting.